## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE THE HONORABLE TIMOTHY R. REIF, JUDGE**

| | |
|---|---|
| BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD. AND RIVERSIDE PLYWOOD CO, ET AL,<br><br>Plaintiffs,<br><br>ZHEJIANG DADONGWU GREENHOME WOOD CO., LTD., et al.,<br><br>Consolidated Plaintiffs,<br><br>and<br><br>LUMBER LIQUIDATORS SERVICES, LLC,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,<br><br>Defendant-Intervenor. | Consol. Court No. 22-00210 |

### RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD OF CONSOLIDATED PLAINTIFFS FINE FURNITURE (SHANGHAI) LIMITED AND DOUBLE F LIMITED

Pursuant to Rule 56.2(c) of the Rules of the U.S. Court of International Trade, Consolidated

Plaintiffs Fine Furniture (Shanghai) Limited and Double F Limited (collectively, "Fine Furniture")

hereby move for judgement on the agency record.  Fine Furniture challenges certain aspects of the final results of the ninth administrative review of the countervailing duty ("CVD") order on Multilayered Wood Flooring from the People's Republic of China issued by the U.S. Department of Commerce.  See Multilayered Wood Flooring From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019, 87 Fed. Reg. 36,305 (Dep't of Commerce June 16, 2022) ("Final Results"), and accompanying Issues and Dec. Mem. ("Final I&D Mem.").  Fine Furniture seeks judgment on the agency record because, for the reasons provided in Fine Furniture's brief in support of this Motion, Commerce made factual and legal errors in its determination that resulted in an inaccurate CVD rate for Fine Furniture. Specifically, Commerce's determination was unsupported by substantial evidence and otherwise not in accordance with law because: (i) Commerce averaged the UN Comtrade data and International Tropical Timber Organization ("ITTO") data in calculating the plywood benchmark when the only reasonable methodology was for Commerce to use only the ITTO C/CC plywood grade prices, (ii) Commerce included UN Comtrade data in calculating the benchmark for face veneer and backboard veneer when the UN Comtrade data are not representative of the veneer inputs due to their broad variety of veneer grades and  (iii) Commerce used adverse facts available ("AFA") to impute a benefit under the Export Buyer's Credit program when the Government of China fully cooperated in the underlying proceeding and there was no gap in the record as to the foreign respondents' use of the program.

For the reasons elaborated in the accompanying brief in support of this Motion, Fine Furniture respectfully moves this Court for an order granting judgment on the agency record including, but not limited to, the following relief:

1. Declaring that Commerce's calculation of the benchmark for plywood was unsupported by substantial evidence;

2. Declaring that Commerce's calculation of the benchmark for veneer was unsupported by substantial evidence; and

3. Declaring that Commerce's decision to impute a benefit to the foreign respondents under the EBCP, based on the application of AFA to the GOC, was not supported by substantial evidence and otherwise not in accordance with law.

A proposed order is attached for the Court's consideration.

Respectfully submitted,

/s/ Kristin H. Mowry
Kristin H. Mowry
Sarah M. Wyss
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015
202-688-3610
Date: March 9, 2023                    trade@mowrygrimson.com

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE THE HONORABLE TIMOTHY R. REIF, JUDGE**

| | |
|---|---|
| **BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD. AND RIVERSIDE PLYWOOD CO, ET AL,** | ) ) ) ) |
| Plaintiffs, | ) ) |
| **ZHEJIANG DADONGWU GREENHOME WOOD CO., LTD., et al.,** | ) ) ) |
| Consolidated Plaintiffs, | ) ) |
| and | ) ) |
| **LUMBER LIQUIDATORS SERVICES, LLC,** | ) ) |
| Plaintiff-Intervenor, | ) **Consol. Court No. 22-00210** ) |
| v. | ) ) |
| **UNITED STATES,** | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| **AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,** | ) ) ) |
| Defendant-Intervenor. | ) ) ) |

## BRIEF IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD OF CONSOLIDATED PLAINTIFFS FINE FURNITURE (SHANGHAI)LIMITED AND DOUBLE F LIMITED

Kristin H. Mowry
Sarah M. Wyss
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015
202-688-3610
trade@mowrygrimson.com

Date: March 9, 2023

**TABLE OF CONTENTS**

Table Of Authorities ..................................................................................................iv

Administrative Determination Under Review........................................................1

Issue Presented ........................................................................................................1

Statement of Facts ....................................................................................................2

Summary of Argument..............................................................................................5

Standard of Review ..................................................................................................6

Argument....................................................................................................................6

  I.   Commerce's Calculation Of The Plywood And Veneer Benchmarks Was Unsupported By Substantial Evidence ..................................................... 6

       A. Plywood Benchmark .................................................................... 8

       B. Veneer Benchmark ...................................................................... 10

  II.  Commerce's Application Of AFA To Impute A Benefit Under The Export Buyer's Credit Program Was Unsupported By Substantial Evidence And Not In Accordance With Law .................................................................................... 12

       A. Commerce's Application Of AFA Was Unsupported By Record Evidence Because There Was No Gap In The Record ...................................................... 12

       B Commerce's Application Of AFA Was Unsupported By Substantial Evidence Because Commerce Failed To Account For The Compliant Customers ...................................... 15

  III. Commerce's Final Results Were Unsupported By Substantial Evidence And Not In Accordance With Law Based On All Other Counts Raised By Riverside And Other Respondent Parties                                                         18

  IV.  Conclusion .......................................................................................... 18

  V.   Request For Court Order And Relief Sought.................................................. 18

## TABLE OF AUTHORITIES

**Cases**

Both-Well Taizhou Steel Fittings v. United States, 557 F. Supp. 3d 1327 (Ct. Int'l Trade 2022)19

Changzhou Trina Solar Energy Co. v. United States, 255 F. Supp. 3d 1312 (Ct. Int'l Trade 2017) ................................................................................................................ 10, 13

Changzhou Trina Solar Energy Co. v. United States, 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ........................................................................................................................ 8

Clearon Corp. v. United States, 359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019) ............................ 19

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938) ........................................................................ 7

Cooper Kunshan Tire Co., Ltd. V. United States, 2022 Ct. Intl. Trade LEXIS 145 (Dec. 8, 2022) .................................................................................................................... 20

Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365 (Fed. Cir. 2014) ...................... 14

Habas Sinai Ve Tibbi Gazlar Istihsal Endiistrisi A.S. v. United States, 413 F. Supp. 3d 1347 (2019) ............................................................................................................... 17

Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369 (Fed. Cir. 2003) ............................ 7

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983) 7, 8

Nippon Steel Corp. v. United States, 337 F.3d 1373 (Fed. Cir. 2003) ........................................ 17

Nippon Steel Corp. v. United States, 458 F.3d 1345 (Fed. Cir. 2006) .......................................... 7

NMB Sing. Ltd. v. United States, 557 F.3d 1316 (Fed. Cir. 2009) .................................... 7, 12, 17

PAM, S.p.A. v. United States, 582 F.3d 1336 (Fed. Cir. 2009) .................................................... 18

Risen Energy Co. v. United States, 570 F. Supp. 3d 1369 (Ct. Int'l Trade 2022)............ 10, 11, 13

Swiff-Train Co. v. United States, 793 F.3d 1355 (Fed. Cir. 2015).................................................. 7

U.S. Steel Corp. v. United States, 37 CIT 1799, 953 F. Supp. 2d 1332 (2013) ............................ 8

Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951) ............................................................... 7

Yama Ribbons & Bows Co. v. United States, No. 19-00047, 2022 Ct. Intl. Trade LEXIS 137 (Dec. 8, 2022) ................................................................................................... 20

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)..................................................................................... 6

19 U.S.C. § 1677e(a)................................................................................................. 12

**Other Authorities**

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the
    People's Republic of China: Final Results of Countervailing Duty Administrative Review;
    2015, 83 Fed. Reg. 34,828 (Dep't of Commerce July 23, 2018)................................... 7

Initiation of Antidumping and Countervailing Duty Administrative Reviews, 86 Fed. Reg.
    12,599 (Dep't of Commerce Mar. 4, 2021) ................................................................. 3

Initiation of Antidumping and Countervailing Duty Administrative Reviews, 86 Fed. Reg. 8166,
    8173 (Dep't of Commerce Feb. 4, 2021)..................................................................... 2

Multilayered Wood Flooring From the People's Republic of China: Final Results and Partial
    Rescission of Countervailing Duty Administrative Review; 2019, 87 Fed. Reg. 36,305 (Dep't
    of Commerce June 16, 2022)...................................................................................... 1

Multilayered Wood Flooring From the People's Republic of China: Preliminary Results of
    Countervailing Duty Administrative Review, and Intent to Rescind Review, in Part; 2019, 86
    Fed. Reg. 73,244 (Dep't of Commerce Dec. 27, 2021)............................................... 4

**Regulations**

19 C.F.R. § 351.511(a)(2)........................................................................................... 7

Pursuant to Rule 56.2(c) of the Rules of the U.S. Court of International Trade, Consolidated Plaintiffs Fine Furniture (Shanghai) Limited and Double F Limited (collectively, "Fine Furniture"), foreign producers and exporters of subject merchandise hereby move for judgement on the agency record. Fine Furniture supports and adopts the Rule 56.2 brief filed by Plaintiffs Baroque Timber Industries (Zhongshan) Co., Ltd. and Riverside Plywood Corporation, et al. (collectively, "Riverside") and provides this brief to supplement the arguments therein consistent with the Court's January 17, 2023 scheduling order. See Mem. of Law in Supp. of Pls. Mot. for J. on the Agency R. (Feb. 7, 2023) ("Riverside Rule 56.2 Br.") (ECF No. 44). [1]

## ADMINISTRATIVE DETERMINATION UNDER REVIEW

Fine Furniture challenges certain aspects of the Final Results of the ninth administrative review of the countervailing duty ("CVD") order on multilayered wood flooring ("MLWF") from the People's Republic of China ("China") issued by the U.S. Department of Commerce ("Commerce"). See Multilayered Wood Flooring From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019, 87 Fed. Reg. 36,305 (Dep't of Commerce June 16, 2022) ("Final Results") (P.R. 375), and accompanying Issues and Dec. Mem. ("Final I&D Mem.") (P.R. 369).  The review in question covers entries of MLWF during the January 1, 2019 through December 31, 2019 period of review ("POR").

## ISSUE PRESENTED

**I.    Whether Commerce's calculation of the plywood benchmark was supported by substantial evidence.**

Commerce's calculation of the plywood benchmark was unsupported by substantial evidence because, in calculating the plywood benchmark price, Commerce averaged the UN

---

[1] All citations in this submission refer to the public version or public documents unless stated otherwise.

Comtrade data and International Tropical Timber Organization ("ITTO") data.  Based on the record evidence, the only reasonable methodology was for Commerce to calculate the plywood benchmark using only the ITTO C/CC plywood grade prices from the "Pine Plywood EU Market" and "Peru plywood" because these data reflect the specific inputs actually used by the foreign manufacturer in producing MLWF.

**II.      Whether Commerce's calculation of the veneer benchmark was supported by substantial evidence.**

Commerce's calculation of the veneer benchmark was unsupported by substantial evidence because Commerce included UN Comtrade data that are overly broad and not representative of the veneer grades used in the MLWF production process.

**III.     Whether Commerce's application of adverse facts available to impute a benefit under the Export Buyer's Credit program was supported by substantial evidence and otherwise in accordance with law.**

Commerce's application of adverse facts available ("AFA") to impute a benefit under the Export Buyer's Credit program ("EBCP") was unsupported by substantial evidence and not in accordance with law because the Government of China ("GOC") cooperated in the underlying proceeding and there was no gap in the record.  Even if there was a gap in the record, Riverside filled that gap with information demonstrating that their U.S. customers did not use or benefit from the EBCP during the POR.

STATEMENT OF FACTS

On February 4, 2021, Commerce initiated the ninth administrative review of the CVD order on MLWF from China covering the period January 1, 2019 through December 31, 2019.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 86 Fed. Reg. 8166, 8173 (Dep't of Commerce Feb. 4, 2021) (P.R. 62); Initiation of Antidumping and Countervailing Duty Administrative Reviews, 86 Fed. Reg. 12,599 (Dep't of Commerce Mar. 4, 2021) (P.R. 63)

2

(correcting the initial notice of initiation of CVD administrative review by adding a company that was inadvertently omitted from the initial notice).

On May 14, 2021, Riverside, as a mandatory respondent in the underlying review, submitted its section III questionnaire response stating that its U.S. customers did not use or benefit from the EBCP during the POR.  See Letter on Behalf of Riverside to Dep't of Commerce re: Riverside Plywood Initial Questionnaire Response at 2-44 (May 14, 2021) ("Riverside Section III QR") (P.R. 109-112).  Riverside also provided declarations from its U.S. customers certifying that its customers did not use or benefit from the EBCP during the POR.  See Riverside Section III QR at Exs. 16a-b, 18a-b (Business Proprietary Document) (C.R. 30-43).

On May 20, 2021, the GOC submitted its section II questionnaire response confirming that none of Riverside's U.S. customers used or benefitted from the EBCP during the POR.  See Letter on Behalf of the GOC to Dep't of Commerce re: GOC Section II Questionnaire Response at 25 (May 20, 2021) ("GOC Section II QR") (P.R. 115-126).

On November 22, 2021, the American Manufacturers of Multilayered Wood Flooring ("AMMWF") provided benchmark information to measure the adequacy of remuneration for programs that were less than adequate remuneration ("LTAR").  See Letter on Behalf of AMMWF to Dep't of Commerce re: Benchmark Pricing Information at 1-5, Exs. 1-A to 1-C (Nov. 22, 2021) ("AMMWF Benchmark") (P.R. 256, 266-275).  Riverside provided its benchmark information on November 23, 2021.  See Letter on Behalf of Riverside to Dep't of Commerce re: Benchmark Data Submission at 1-3, Exs. 2-4B (Nov. 23, 2021) (Business Proprietary Document) ("Riverside Benchmark") (P.R. 277-286) (C.R. 101-116).

On December 27, 2021, Commerce published the preliminary results of the ninth administrative review of MLWF from China.  See Multilayered Wood Flooring From the People's

3

Republic of China: Preliminary Results of Countervailing Duty Administrative Review, and Intent to Rescind Review, in Part; 2019, 86 Fed. Reg. 73,244 (Dep't of Commerce Dec. 27, 2021) (P.R. 311), and accompanying Dec. Mem. (Dec. 17, 2021) (P.R. 303).

On February 22, 2022, interested parties, including Fine Furniture, submitted case briefs for Commerce's consideration prior to issuing the Final Results.  See Letter on Behalf of Fine Furniture to Dep't of Commerce re: Case Br. at 1 (Feb. 18, 2022) (P.R. 345).  Fine Furniture argued that 1) Commerce improperly applied AFA to impute a benefit under the EBCP, 2) Commerce erred in determining the benefit received by Riverside under the veneers for LTAR program, 3) Commerce failed to use the most accurate data in calculating the benchmarks for certain inputs, 4) Commerce should weight average its inland freight benchmark calculation and 5) Commerce made several clerical errors in the preliminary results calculation.  See id. at 1-22.  Fine Furniture also joined in arguments made by other respondents.  Id. at 22.

On March 2, 2022, the mandatory respondents and Fine Furniture submitted timely rebuttal briefs.  See Letter on Behalf of Fine Furniture to Dep't of Commerce re: Rebuttal Br. at 1-8 (Mar. 2, 2022) (P.R. 357).  On March 30, 2022, Commerce held a hearing concerning issues raised in the case briefs.  See Final I&D Mem. at 4 (P.R. 369).

On June 16, 2022, Commerce published its Final Results.  See Final Results, 87 Fed. Reg. at 36,305 (P.R. 375), and accompanying Final I&D Mem. (P.R. 369).

In the Final Results, Commerce countervailed the EBCP by finding that the GOC did not provide the requested documents, which created a gap in the record, and further finding that the mandatory respondents failed to establish non-use even with sufficient evidence from their U.S. customers.  See Final I&D Mem. at Cmt. 1 (P.R. 369).  In addition, Commerce calculated the face veneer benchmark based on an average of ITTO data and UN Comtrade data and backboard veneer

benchmark based on UN Comtrade data.  <u>See</u> <u>id</u>. at Cmt. 8E.  Finally, Commerce continued to value the plywood benchmark by taking a weight-average of the ITTO data and UN Comtrade data on the record despite Fine Furniture's arguments that Commerce should rely only on grade C/CC provided under the ITTO data.  <u>See</u> <u>id</u>. at Cmt. 8D.

## SUMMARY OF ARGUMENT

Commerce's decision to rely on the UN Comtrade data to calculate the benchmark for the provision of plywood for LTAR program and provision of veneers for LTAR program was unsupported by substantial evidence because the ITTO data is the only product-specific data on the record for the calculation of these benchmarks.  Record evidence demonstrates that Riverside used grade C or D plywood as an input in producing MLWF, which is specifically identified in the ITTO data.  Record evidence also confirms that Riverside used face and back veneer in its production, which is accurately described under the ITTO data because they differentiate different types of veneers, unlike the UN Comtrade data.  Because the UN Comtrade data include broad HTS subheadings without specifying the different types of plywood grades and veneer types, they are not product-specific data relevant to calculating Riverside's plywood and veneer benchmark prices and Commerce's decision to use the UN Comtrade data is unsupported by substantial evidence.  Lastly, Commerce's application of AFA to impute a benefit under the EBCP was unsupported by substantial evidence and otherwise not in accordance with law because there was no gap in the record in the underlying review proceeding and record evidence confirms that Riverside's U.S. customers did not use or benefit from the EBCP during the POR.

**STANDARD OF REVIEW**

"The Court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (internal quotation marks omitted).  Substantial evidence requires "more than a mere scintilla," see, e.g., Swiff-Train Co. v. United States, 793 F.3d 1355, 1359 (Fed. Cir. 2015) (internal quotation marks omitted) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence supporting an agency determination must be based on the whole record, and the Court shall take into account not only the information that supports the agency's decision but also whatever in the record "fairly detracts from its weight." Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477-78 (1951)) (internal quotation marks omitted). Although Commerce does not have to provide perfect explanations, "the path of Commerce's decision must be reasonably discernable." NMB Sing. Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009) (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43-44 (1983)).  Further, "{t}o be in accordance with law, a decision must not be arbitrary and capricious . . . and must be supported by substantial evidence and reasoned explanations." U.S. Steel Corp. v. United States, 37 CIT 1799, 1801-02, 953 F. Supp. 2d 1332, 1336 (2013) (citing Motor Vehicle, 463 U.S. at 43-44 (1983)).

**ARGUMENT**

I.   **COMMERCE'S CALCULATION OF THE PLYWOOD AND VENEER BENCHMARKS WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

Commerce's benchmark calculation for plywood and veneer by averaging the UN Comtrade and ITTO data was unsupported by substantial evidence because the UN Comtrade data do not include grade-specific prices or specific veneer types that are representative of Riverside's plywood and veneer inputs. The Court has routinely found that "when goods are provided for LTAR, Commerce determines the amount of the subsidy by comparing remuneration actually paid with adequate remuneration." Changzhou Trina Solar Energy Co. v. United States, 352 F. Supp. 3d 1316, 1332 (Ct. Int'l Trade 2018) (citing 19 U.S.C. § 1677(5)(E)(iv)).[2]  In its regulations, Commerce employs a three-tiered hierarchy to measure the adequacy of remuneration.  19 C.F.R. § 351.511(a)(2) (2022).  Commerce first seeks to compare the government price to a market-determined price "resulting from actual transactions in the country in question" (or also known as "tier one").  Id. at § 351.511(a)(2)(i).  In the absence of a tier one benchmark, Commerce turns to a world market price (or also known as "tier two") and "{w}here there is more than one commercially available world market price, the Secretary will average such prices to the extent practicable, making due allowance for factors affecting comparability."  Id. § 351.511(a)(2)(ii) (emphasis added).  If there is no world market price available, Commerce will "measure the adequacy of remuneration by assessing whether the price is consistent with market principles."  Id. § 351.511(a)(2)(iii).  In selecting benchmarks, Commerce's practice is to select the most product-specific benchmark possible for use in LTAR calculations.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2015, 83 Fed Reg. 34,828 (Dep't of Commerce July 23, 2018), and accompanying Issues and Dec. Mem. at Cmt. 3 (stating that

_____

[2] This CIT decision and all others cited herein are provided as well-reasoned persuasive authority.

"Commerce's practice is normally to rely on data reflecting the narrowest category of products encompassing the input product").

In this case, Commerce unreasonably failed to follow its past practice of selecting product-specific benchmarks by relying on UN Comtrade data in calculating the plywood and veneer benchmarks. As explained further below, Commerce's used of the UN Comtrade data to calculate Riverside's plywood and veneer benchmarks is unsupported by substantial evidence because it includes prices based on broad range of HTS subheadings that are not specific to Riverside's plywood inputs. The UN Comtrade data is also not the appropriate dataset to calculate Riverside's veneer benchmark because such data do not specify and differentiate on the different types of veneers utilized by Riverside in producing MLWF.

### A. Plywood Benchmark

In its Final Results, despite substantial record evidence submitted by Riverside demonstrating that ITTO C/CC grade data is the most specific and appropriate data to calculate the plywood benchmark price, Commerce calculated the plywood benchmark price by averaging the UN Comtrade data and ITTO data for Brazil and Peru. See Final I&D Mem. at Cmt. 8D (P.R. 369). In its reasoning, Commerce stated that "Riverside did not adequately support its argument that the UN Comtrade data are inappropriate to calculate the plywood benchmark for Baroque Timber's purchases of C/D grade plywood." Id. Commerce's finding, however, stands in contrast to the agency's own past practice and the court's past interpretation of benchmark standards. Commerce and, specifically, the Court, recognized the importance of a product-specific data set to ensure an accurate benchmark calculation. See Changzhou Trina Solar Energy Co. v. United States, 255 F. Supp. 3d 1312, 1320 (Ct. Int'l Trade 2017) ("The government focuses on product specificity as being a crucial factor in calculating an accurate benchmark."); Risen Energy Co. v.

United States, 570 F. Supp. 3d 1369, 1378 (Ct. Int'l Trade 2022) (stating that a particular data "likely does not add to the accuracy of the benchmark calculation when there is the clearly acceptable {} data available").  The Court in Risen Energy held that Commerce should consider the language provided in its own regulation to decide whether it is necessary to use particular data "to arrive at a 'world market price' and discuss the identified flaws in the data." Id.  Particularly, the Court explained that Commerce "offered no logical reason to perform its current simple average of the datasets." Id.

Three facts are critical and firmly established on the record.  First, Riverside documented on the record that all of its plywood purchases were C or D grade plywood. See Letter on Behalf of Riverside to Dep't of Commerce re: Benchmark Rebuttal at 1, Ex. 1 (Dec. 2, 2021) ("Riverside Benchmark Rebuttal") (P.R. 295).  Second, the UN Comtrade data are not specific to grade C and D plywood.  Id. At Ex. 1.  Third, the ITTO data do provide grade-specific data matching Riverside's purchases.  Id.  Relying on these facts, Riverside explained to Commerce in the underlying review that the UN Comtrade data are not the appropriate data to calculate the plywood benchmark because the UN Comtrade data are not product specific.  See Letter on Behalf of Riverside to Dep't of Commerce re: Admin. Case Br. at 6-13 (Feb. 22, 2022) ("Riverside Case Br.") (P.R. 346); see also Riverside Benchmark Rebuttal at Exs. 1-2 (P.R. 295); see also Riverside Benchmark at Ex. 3 (Business Proprietary Document) (C.R. 101-116) (providing supplier certifications).  Riverside specifically explained where Commerce also acknowledged that Riverside's plywood inputs are limited to a particular C or D grade only.  Riverside Case Br. at 6 (P.R. 346); see also Final I&D Mem. at Cmt. 8D (P.R. 369) ("We agree with Riverside that Baroque Timber's plywood purchases consisted solely of C/D grade plywood.")

In the Final Results, although Commerce agreed with Riverside that its "purchases consisted solely of C/D grade plywood," Commerce did not sufficiently explain why it nevertheless included the UN Comtrade data in the plywood benchmark calculation even though they are not specific to grade C/D plywood. Commerce merely cited its regulatory "practice to average multiple world market prices, pursuant to 19 CFR 351.511(a)(2)(ii)" as its reasoning to simple average the UN Comtrade data and ITTO data, but failed to support its determination to include a world market price from data that are not representative of the input used by the respondent. Final I&D Mem at Cmt. 8D (P.R. 369). Merely citing to its own regulation to explain its reasoning is not a sufficient explanation. See NMB Sing., 557 F.3d at 1319 (stating that "the path of Commerce's decision must be reasonably discernable"). Because record evidence confirms that the ITTO data is the only available world market price data that provides for specific plywood grades, Commerce acted unreasonably by refusing to calculate Riverside's plywood benchmark based on the ITTO data.

In short, and as explained in depth in the Rule 56.2 brief of Riverside,[3] Commerce failed to adequately explain its reasoning for relying on the UN Comtrade data in calculating the plywood benchmark and for departing from its practice of using product-specific data in its benchmark calculation. Commerce's determination in calculating the plywood benchmark price by averaging the UN Comtrade and ITTO data was, therefore, unsupported by substantial evidence.

**B. Veneer Benchmark**

Similar to its plywood benchmark calculations, Commerce failed to follow its practice in selecting product-specific data in relying on the UN Comtrade data to calculate the veneer benchmark. Although Commerce acknowledged and agreed with Riverside that backboard and

---

[3] See Riverside Rule 56.2 Br. at 6-17 (ECF No. 44).

face veneers are different in terms of wood species, price and use, Commerce failed to sufficiently explain its decision to rely on the UN Comtrade data in calculating the veneer benchmark.  See Final I&D Mem. at Cmt. 8E (P.R. 369) (calculating the face veneer benchmark by using "a weighted average of the UN Comtrade data averaged with the simple average of the ITTO Peru – Core/Face data and the Ghana – Face data" and calculating the backboard veneer benchmark by averaging the UN Comtrade data, ITTO Peru – Core/Face data, and the ITTO Ghana – Core data).

As explained by Riverside in its Rule 56.2 brief, Riverside provided ample evidence to Commerce showing that the UN Comtrade data are not representative of the backboard and face veneer purchases.  Specifically, the broad HTS subheadings from the UN Comtrade data do not identify the types of veneers, namely backboard and face veneers, like the ITTO data.  Compare AMMWF Benchmark at Ex. 1-b to 1-C (P.R. 256, 266-275) with Riverside Benchmark at Ex. 2 (P.R. 277-286).  Commerce itself also acknowledged that "the record supports Riverside's claims that Baroque Timber's backboard differs from face veneers 'in terms of wood species, price, and use," and more importantly, "Riverside has submitted benchmark data that are specific to backboard and to face veneer."  Final I&D Mem. at Cmt. 8E (P.R. 369).   As explained above, Commerce is guided by its practice to select the most product-specific data to calculate the benchmark price because the result will be accurate.  See Changzhou Trina, 255 F. Supp. 3d at 1320; Risen Energy, 570 F. Supp. 3d at 1378.  Because record evidence overwhelmingly confirms that Riverside submitted data that represents its specific veneer purchases, i.e., the ITTO data, and that the UN Comtrade data are overly broad, Commerce acted without substantial evidence by not relying on the ITTO data alone as the only product-specific data on the record.

Given the above considerations, Commerce's determination in averaging the UN Comtrade data and the ITTO data for the calculation of the veneer benchmark was unsupported by substantial

evidence because Commerce failed to follow its practice in selecting product-specific data on the record in calculating the veneer benchmark.

## II.    COMMERCE'S APPLICATION OF AFA TO IMPUTE A BENEFIT UNDER THE EXPORT BUYER'S CREDIT PROGRAM WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

Commerce's use of AFA to impute a benefit under the EBCP to Riverside was unsupported by substantial evidence and not in accordance with law because the GOC and Riverside cooperated in the underlying review and no information was missing from the record.  The statute only allows Commerce to use facts otherwise available in reaching its determination in the event that necessary information is not available on the record, or an interested party failed to provide such information by the deadline of the submission or in the form and manner requested by Commerce. 19 U.S.C. § 1677e(a). When an interested party has failed to cooperate by not acting to the best of its ability to comply with Commerce's request, the statute authorizes Commerce to apply adverse inferences when an interested party, including a foreign government, fails to provide requested information. Id. at § 1677e(b); Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365, 1371 (Fed. Cir. 2014).  Commerce, however, must consider evidence on the record that fills the gaps created by the government's lack of cooperation.  See GPX Int'l Tire Corp. v. United States, 37 CIT 19, 58-59 (2013), aff'd, 780 F.3d 1136 (Fed. Cir. 2015).  Commerce did not do so here.

### A. Commerce's Application of AFA Was Unsupported by Record Evidence Because There Was No Gap in the Record

Commerce's application of AFA was unsupported by substantial evidence because there was no missing information on the record.  In its Final Results, Commerce determined that the GOC failed to provide "necessary information needed to understand the operation of the {EBCP}" and "that non-use certificates cannot replace the cooperation of the GOC."  Final I&D Mem. at Cmt. 1.  Commerce's determination is contrary to law because, as the Court has found, information

of the operation of the EBCP is not necessary to verify the mandatory respondents' claim of non-use of the program.  See, e.g., Clearon Corp. v. United States, 474 F. Supp. 3d 1339, 1350 nn.10-12 (Ct. Int'l Trade 2020) (rejecting Commerce's position that information about the operation of the Export Buyer's Credit Program is necessary for it to verify a respondent's claimed non-use of the program).  Instead, "Commerce's statutory duty was to determine whether and to what extent the Export Buyer's Credit Program provided a benefit" to the mandatory respondents.  Zhejiang Junyue Standard Part Co. v. United States, 578 F. Supp. 3d 1280, 1294 (Ct. Int'l Trade 2022).  In Zhejiang Junyue, the Court noted that "the statute mandates that Commerce shall verify all information in making a final determination in an investigation," which also includes non-use certificates submitted by the respondents in the underlying review in that case.  Id. at 1294 (citing 19 U.S.C. § 1677m(i)(1)) (internal quotation marks omitted).  The Court specifically noted that record evidence provided non-use declarations by the U.S. customers showing that "neither of the {respondents} nor their U.S. customers used or benefitted from the program during the period of investigation." Id. at 1294.  The Court ultimately held that Commerce's determination in finding that there was a gap in the factual record was unsupported by substantial evidence. Id. at 1295.  The Court's explanation in Zhejiang Junyue is instructive and this Court should follow the same reasoning here.

In this case, record evidence sufficiently supports that Riverside, including their U.S. customers, did not benefit from the EBCP because Riverside confirmed that none of their non-affiliated U.S. customers used or benefitted from the EBCP.  See Riverside Section III QR at 26-27, Exs. 18a-b (Business Proprietary Document) (C.R. 30-43).  Moreover, the GOC has also repeatedly confirmed that none of the mandatory respondents nor its U.S. customers used or benefitted from the EBCP as confirmed by the records of China EX-IM bank.  See GOC Section

II QR at 23-28 (P.R. 115-126); Letter on Behalf of the GOC to Dep't of Commerce re: GOC

Supplemental Questionnaire Response at 3-8 (Aug. 25, 2021) ("GOC Suppl. QR") (P.R. 154).  The

GOC also sufficiently explained that

> whether a foreign buyer receives any loan pursuant to the Export Buyer's Credit
> program can be confirmed by the Chinese exporter. Normally, if there is a loan
> under the {EBCP}, the Chinese exporter should be aware of the buyer's receipt of
> loans and should be involved in the loan evaluation proceeding and in particular in
> the post-lending loan management.

GOC Suppl. QR at 5 (P.R. 154).  Finally, Riverside submitted declarations further clarifying that

certain customers did not use or benefit from the EBCP.  Consequently, record evidence supports

only one finding – that Riverside, including their U.S. customers, did not use or benefit from the

EBCP during the POR.

Despite evidence of non-use certificates provided by Riverside, Commerce nevertheless

determined that Riverside used and benefitted from the EBCP during the POR.  See Final I&D

Mem. at Cmt. 1 (P.R. 369).  Commerce further stated that Riverside did not provide declarations

of non-use certifications of the EBCP for all of its U.S. customers.  See id. Commerce's

determination was unsupported by substantial evidence because Riverside fully cooperated and

provided sufficient information in establishing their non-use from EBCP.

To determine whether a respondent cooperated to the best of its ability, Commerce will

assess whether the respondent "has put forth its maximum effort to provide Commerce with full

and complete answers to all inquiries in an investigation." Habas Sinai Ve Tibbi Gazlar Istihsal

Endiistrisi A.S. v. United States, 413 F. Supp. 3d 1347, 1353 (2019) (citing Nippon Steel Corp. v.

United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003)) (internal quotation marks omitted).  Here,

Riverside provided Commerce with full and complete answers to its questions related to the EBCP

along with customer declarations of non-use. See Riverside Section III QR at 26-27, Exs. 18a-b

(Business Proprietary Document) (C.R. 30-43).  In its Final Results, without providing any past precedent, Commerce arbitrarily dismissed Riverside's non-use certificates because Riverside did not provide declarations of non-use certifications from all of its U.S. customers.  See Final I&D Mem. at Cmt. 1 (P.R. 369).  Commerce's explanation was not supported by substantial evidence because Commerce failed to sufficiently explain its determination in dismissing Riverside's non-use certificates without any support.  See NMB Sing., 557 F.3d at 1319 ("Commerce must explain the basis for its decisions; while its explanations do not have to be perfect, the path of Commerce's decision must be reasonably discernable to a reviewing court.").  In particular, Commerce did not explain why, under the statute, its regulations or past practice, it could not confirm the accuracy of the customer declarations that were on the record or, if necessary, adjust the EBCP rate to account for the level of customer compliance, as explained below in section B.  By acting otherwise, Commerce ignored the whole record and, thus, failed to support its determination with substantial evidence.

Given that Riverside was fully cooperative, submitted customer declarations to the greatest extent possible and that no information on the record established that any customers used the program, the only reasonable inference was for Commerce to find that there was no gap in the record regarding Riverside's use of the program.  Commerce's determination otherwise was, therefore, unsupported by substantial evidence and not in accordance with law.

### B.  Commerce's Application of AFA Was Unsupported by Substantial Evidence Because Commerce Failed to Account for the Compliant Customers

Despite Commerce's focus on Riverside's failure to secure declarations from all U.S. customers, Commerce failed to explain why it could not still recognize the customers that did submit declarations when making its EBCP determination.  Instead, Commerce ignored record evidence from the customers that did submit declarations.  For these customers, there was no gap

15

in the record and the Court must consider those non-use declarations when reviewing the record as a whole under the substantial evidence standard.  See PAM, S.p.A. v. United States, 582 F.3d 1336, 1337 (Fed. Cir. 2009) (explaining that "{t}he court will review the record as a whole – including any evidence that 'fairly detracts from the substantiality of the evidence' – in determining whether substantial evidence exists").

Even if the Court upholds Commerce's refusal to accept the declarations as evidence of non-use for all customers, it must still overturn Commerce's refusal to accept them as evidence of non-use for those that did respond because there is no gap in the record as to the cooperative customers.  Commerce received confirmations from the GOC and non-use certifications from certain U.S. customers of Riverside Plywood customers confirming that they did not benefit from the EBCP.  See Riverside Section III QR at 26-27, Exs. 18a-b (Business Proprietary Document) (C.R. 30-43); GOC Section II QR at 23-28 (P.R. 115-126); GOC Suppl. QR 3-8 (Aug. 25, 2021) (P.R. 154).  The Court has consistently held that Commerce's application of AFA is unreasonable when cooperative respondents have provided evidence of non-use from EBCP.  See, e.g., Both-Well Taizhou Steel Fittings v. United States, 557 F. Supp. 3d 1327, 1337 (Ct. Int'l Trade 2022) (holding that if Commerce wished to continue using AFA upon remand Commerce "must attempt to verify the non-use certifications by either asking {the respondent} to have its U.S. customers explain in detail how the customers were able to certify that they did not either directly or indirectly benefit from EBCP, or through some other alternative means of verifying the non-use certifications"); Clearon Corp. v. United States, 359 F. Supp. 3d 1344, 1357 (Ct. Int'l Trade 2019) (stating that the respondent and GOC provided "a good deal" of evidence that the customers did not use the EBCP).

Recently, the Court sustained Commerce's remand redetermination finding that a respondent did not benefit from the EBCP after Commerce reconsidered its determination by relying on the respondent's and GOC's statements on the record that none of the respondent's customers used the program during the POR as evidenced by the customers' non-use certificates. Yama Ribbons & Bows Co. v. United States, No. 19-00047, 2022 Ct. Intl. Trade LEXIS 137, at *9 (Dec. 8, 2022). Although in Cooper Kunshan Tire Co. v. United States, the Court sustained Commerce's remand results applying AFA due to the lack of verifiable information on the record to fill the gap, the same facts do not apply here. Cooper Kunshan Tire Co., Ltd. V. United States, 2022 Ct. Intl. Trade LEXIS 145 (Dec. 8, 2022). In that case, the Court agreed that "because the respondents did not provide any customer certifications of non-use, it {was} unclear whether any communication ever took place between the respondents and their customers." Id at 76 (internal quotation marks omitted). In addition, the Court agreed that Commerce reasonably explained that "without certifications that show that the customers would be likely to participate . . . Commerce would not be able to conduct an accurate spot-check of potentially relevant transactions." Id. at 76-77. Unlike the facts presented in that case, here, Riverside fully cooperated and provided non-use certifications from customers to the greatest extent possible. Specifically, Riverside has communicated with its customers in requesting the non-use certifications to establish non-use of the program. See Riverside Section III QR at Exs. 18a-b (Business Proprietary Document) (C.R. 30-43). Commerce received confirmations from the GOC and non-use certifications from certain U.S. customers confirming that they did not benefit from the EBCP. See id. at 26-27, Exs. 18a-b. Further, Riverside confirmed that none of their non-affiliated U.S. customers used or benefitted from the EBCP. Id.

17

Because there is no gap in the record as to the cooperative customers, the only reasonable determination considering the whole record was for Commerce to recognize those non-use declarations and either infer non-use of the program in its entirety or, at least, make an adjustment to the EBCP rate to account for the cooperative customers.  Commerce's determination otherwise was, thus, unsupported by substantial evidence and not in accordance with law.

### III.   COMMERCE'S FINAL RESULTS WERE UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW BASED ON ALL OTHER COUNTS RAISED BY RIVERSIDE AND OTHER RESPONDENT PARTIES

Fine Furniture concurs with and incorporates by reference the Rule 56.2 motion for judgement on the agency record and accompanying briefs of Riverside and all other respondent parties that are plaintiffs in this consolidated action.

### IV.   CONCLUSION

For the foregoing reasons, Fine Furniture requests that the Court grant its Motion for Judgment on the Agency Record because the Final Results were unsupported by substantial record evidence or otherwise not in accordance with law.  Fine Furniture respectfully requests that the Court remand the Final Results to Commerce for a determination in accordance with the points of law discussed above.

### V.   REQUEST FOR COURT ORDER AND RELIEF SOUGHT

For the reasons explained above, Fine Furniture respectfully moves this Court for an order granting judgment on the agency record including, but not limited to, the following relief:

1. Declaring that Commerce's calculation of the benchmark for plywood was unsupported by substantial evidence;

2. Declaring that Commerce's calculation of the benchmark for veneer was unsupported by substantial evidence; and

3.  Declaring that Commerce's decision to impute a benefit to the foreign respondents under the EBCP, based on the application of AFA to the GOC, was not supported by substantial evidence and otherwise not in accordance with law.

Respectfully submitted,

Dated: March 9, 2023

/s/ Kristin H. Mowry
Kristin H. Mowry
Sarah M. Wyss
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Fine Furniture*

19

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Kristin H. Mowry, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 5,490 words.

Dated: March 9, 2023

/s/ Kristin H. Mowry
Kristin H. Mowry
Sarah M. Wyss
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Fine Furniture*