UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE TIMOTHY R. REIF, JUDGE

| | |
|---|---|
| BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD. AND RIVERSIDE PLYWOOD CO, ET AL, <br><br> Plaintiffs, <br><br> ZHEJIANG DADONGWU GREENHOME WOOD CO., LTD., et al., <br><br> Consolidated Plaintiffs, <br><br> and <br><br> LUMBER LIQUIDATORS SERVICES, LLC, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, <br><br> Defendant-Intervenor. | Consol. Court No. 22-00210 |

**REPLY BRIEF OF CONSOLIDATED PLAINTIFFS FINE FURNITURE (SHANGHAI) LIMITED AND DOUBLE F LIMITED**

Kristin H. Mowry
Sarah M. Wyss
Ronalda G. Smith
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015
202-688-3610
trade@mowrygrimson.com

Date: September 29, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I. COMMERCE'S CALCULATION OF THE PLYWOOD AND VENEER BENCHMARKS WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE ............ 3

    A. The UN Comtrade Data Are Overinclusive and Do Not Reasonably Represent a Benchmark for the Plywood for Less Than Adequate Remuneration Program .. 3

    B. The UN Comtrade Data Are Not Representative of the Veneers Used in Multilayered Wood Flooring Production ................................................................ 6

II. COMMERCE'S USE OF AFA IN ITS EXPORT BUYER'S CREDIT PROGRAM DETERMINATION WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW .......................................................................... 7

III. CONCLUSION .................................................................................................................. 9

## TABLE OF AUTHORITIES

**Cases**

Changzhou Trina Solar Energy Co. v. United States, 255 F. Supp. 3d 1312 (Ct. Int'l Trade 2017) ................................................................................................................................ 7

Changzhou Trina Solar Energy Co. v. United States, No. 17-00246, 2019 Ct. Intl. Trade LEXIS 144 (2019) ................................................................................................................. 6

Risen Energy Co. v. United States, 570 F. Supp. 3d 1369 (Ct. Int'l Trade May 12, 2022) ....... 6, 7

Yama Ribbons & Bows Co. v. United States, No. 21-00402, 2023 Ct. Intl. Trade LEXIS 129 (Aug. 25, 2023) .................................................................................................................... 9

**Other Authorities**

Multilayered Wood Flooring From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019, 87 Fed. Reg. 36,305 (Dep't of Commerce June 16, 2022) ........................................................................................ 6

**Regulations**

19 C.F.R. § 351.511 ...................................................................................................................... 6

Consolidated Plaintiffs Fine Furniture (Shanghai) Limited and Double F Limited (collectively, "Fine Furniture"), foreign producers and exporters of subject merchandise, hereby reply to the response briefs of Defendant United States and Defendant-Intervenor the American Manufacturers of Multilayered Wood Flooring ("AMMWF").  See Def.'s Resp. to Pls.' Mot. For J. On The Agency R. (June 21, 2023), ECF No. 52 ("Def.'s Resp."); Def. Intervenor's Resp. to Mot. For J. on the Agency R. (July 21, 2023), ECF No. 54 ("AMMWF Resp.").[1]  Fine Furniture supports and adopts the reply brief filed by Plaintiffs Baroque Timber Industries (Zhongshan) Co., Ltd. and Riverside Plywood Corporation, et al. (collectively, "Baroque") and provides this brief to supplement the arguments therein consistent with the Court's August 28 scheduling order.  See Pls.' Reply Br. (Sept. 15, 2023), ECF No. 59 ("Pls.' Reply Br."); see also Order (Aug. 8, 2023), ECF No. 56.

**ARGUMENT**

**I.    COMMERCE'S CALCULATION OF THE PLYWOOD AND VENEER BENCHMARKS WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

**A.    The UN Comtrade Data Are Overinclusive and Do Not Reasonably Represent a Benchmark for the Plywood for Less Than Adequate Remuneration Program**

Commerce's decision to include the UN Comtrade data in its benchmark calculation for the provision of plywood for less than adequate renumeration ("LTAR") program was unsupported by substantial evidence because the UN Comtrade data are overinclusive and not grade specific.

The United States and AMMWF do not dispute that the UN Comtrade and International Tropical Timber Organization ("ITTO") data are representative of a world market price to value

---

[1] All citations in this submission refer to the public version or public documents unless stated otherwise.

3

the benchmark price for plywood and veneer inputs purchased by Baroque. See Def.'s Resp. at 11; AMMWF Resp. at 10.  The issue remains, however, as to whether the UN Comtrade data consists of products that are comparable to the product at issue, namely plywood used in the production of multilayered wood flooring.  Pursuant to 19 C.F.R. § 351.511(a)(2)(ii) (2022), Commerce should "adequately account{} for 'factors affecting comparability'" in selecting data for the benchmark calculations.  Changzhou Trina Solar Energy Co. v. United States, No. 17-00246, 2019 Ct. Intl. Trade LEXIS 144, at *16 (2019) (citing 19 C.F.R. § 351.511(a)(2)(ii)).  In the Final Results, however, Commerce failed to account factors affecting comparability and calculated the benchmark price by averaging the UN Comtrade data and ITTO data even though the ITTO data placed in the record by Baroque are more specific to value Baroque's plywood purchase, i.e., C/D grade plywood, than the UN Comtrade data.  See Multilayered Wood Flooring From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019, 87 Fed. Reg. 36,305 (Dep't of Commerce June 16, 2022) ("Final Results") (P.R. 375), and accompanying Issues and Dec. Mem. at Cmt. 8D ("Final I&D Mem.") (P.R. 369).

The United States correctly explains that a more narrow dataset is preferable over a general dataset, noting that "Commerce's practice is to consider whether a dataset represents comparable—not identical—commercially available world market prices, and if so, to include it in the calculation of the benchmark, narrowing it to a more relevant subset if appropriate." Def.'s Resp. at 12 (emphasis added).  The United States further acknowledges the importance of using data that contribute to an accurate benchmark price, noting that the Court in Risen Energy Co. v. United States, 570 F. Supp. 3d 1369 (Ct. Int'l Trade May 12, 2022), "emphasized the importance of using data that contributed to the 'accuracy' of the benchmark price." Def.'s Resp. at 13-14.

Indeed, the Court in Risen Energy stated that Commerce should consider using certain data that "reflects the price a firm actually paid or would pay if it imported the product." Risen Energy, 570 F. Supp. 3d at 1379. In that case, the Court also acknowledged "that in some contexts, such data might result in a reasonabl{e} determination of the world market price." Id. (emphasis added). As explained by Baroque in its reply brief, the robustness of the UN Comtrade data is not representative of Baroque's plywood purchase because the UN Comtrade data covers all grades of plywood whereas Baroque's plywood purchases were only limited to certain grades, i.e., C/D grade plywood. See Pls.' Reply Br. at 3-4.

Further, the United States stated that "Commerce reasonably included in its calculation a global dataset from UN Comtrade that cover grades of plywood purchased by Baroque." Def.'s Resp. at 18. But the United States also acknowledged that the UN Comtrade dataset cover all grades of plywood that are not differentiated and "could not be filtered by grade." Id. at 15. Importantly, however, the UN Comtrade includes a more costly, grade A plywood, which is not representative of the C/D grade plywood purchased by Baroque. See Pls.' Reply Br. at 4. Commerce and, specifically, the Court, recognized the importance of a product-specific data set to ensure an accurate benchmark calculation. See Changzhou Trina Solar Energy Co. v. United States, 255 F. Supp. 3d 1312, 1320 (Ct. Int'l Trade 2017) ("The government focuses on product specificity as being a crucial factor in calculating an accurate benchmark."). By using an inaccurate dataset that is not representative of the respondent's purchases, Commerce defeats the purpose in calculating an accurate benchmark.

In sum, Commerce failed to select the appropriate data to value Baroque's plywood purchase. Commerce's determination in calculating the plywood benchmark price by averaging the UN Comtrade and ITTO data was, therefore, unsupported by substantial evidence.

5

### B. The UN Comtrade Data Are Not Representative of the Veneers Used in Multilayered Wood Flooring Production

For similar reasons as explained above, Commerce's use of UN Comtrade data to calculate the benchmark for veneer purchases was unsupported by substantial evidence and the ITTO data remain the only representative data on the record.

The United States argues that "Commerce found that the record did not show that the UN Comtrade data are unrepresentative of backboard or face veneer purchases." Def.'s Resp. at 19. The United States is wrong. During the administrative review, Baroque provided significant evidence to Commerce showing that the UN Comtrade data are not representative of its backboard and face veneer purchases. Notably, Commerce acknowledged that that "the record supports Riverside's claims that Baroque Timber's backboard differs from face veneers 'in terms of wood species, price, and use," and more importantly, "Riverside has submitted benchmark data that are specific to backboard and to face veneer." Final I&D Mem. at Cmt. 8E (P.R. 369). Commerce should, therefore, select the most appropriate product-specific data, i.e., ITTO data to calculate the benchmark price instead of calculating the benchmark price with UN Comtrade data as it represents inaccurate results.

In short, Commerce's determination in averaging the UN Comtrade data and the ITTO data for the calculation of the veneer benchmark was unsupported by substantial evidence because Commerce failed to follow its practice in selecting product-specific data on the record in calculating the veneer benchmark.

## II. COMMERCE'S USE OF AFA IN ITS EXPORT BUYER'S CREDIT PROGRAM DETERMINATION WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

Commerce's decision to apply adverse facts available ("AFA") to impute a benefit under the Export Buyer's Credit program ("EBCP") was unsupported by substantial evidence and not in accordance with law because the Government of China ("GOC") and Baroque fully cooperated in the underlying proceeding and there was no gap in the record as to the foreign respondents' use of the program.

The United States argues that the missing information that warrant Commerce's application of AFA "is the list of banks that may gave disbursed loans to respondents' United States customers" which can only be provided by the GOC. Def.'s Resp. at 32. The United States also contends that Commerce properly applied AFA to the EBCP and to Baroque's customers, arguing that the company failed to provide non-use certifications for all of its U.S. customers and that AFA is warranted because "Baroque only submitted non-use certificates from a minority of its customers." See Def.'s Resp. at 32, 34. The United States' argument lacks merit.

Most recently, the Court in Yama Ribbons & Bows Co. v. United States, No. 21-00402, 2023 Ct. Intl. Trade LEXIS 129, at *29 (Aug. 25, 2023), found that Commerce impermissibly applied AFA to a cooperating respondent where the GOC was deemed uncooperative. There, the respondent responded to Commerce's questionnaire by providing a list of U.S. customers along with their addresses to which the respondent exported subject merchandise during the POR. Id. at *12. The respondent also provided written declarations of approximately twenty-eight percent of its U.S. customers from the list of customers certifying that they did not use the EBCP during the POR. Id. at *13. Commerce eventually "did not find from record evidence that {the respondent} participated in the EBCP" and "did not find as a fact that any {of the respondent's} customer

actually received a loan under the program" but found that the GOC did not cooperate to the best of its ability as it failed to provide a "list of correspondent banks," among other items. Id. at *8, *21. The Court, however, held that Commerce's application of AFA was "critically flawed" because Commerce based its adverse inference on its reliance on the missing information from the GOC. Id. at *21 (emphasis added). Importantly, the Court held that the GOC's failure to provide the requested information is insufficient "to support an adverse inference of a benefit to {the respondent} from the EBCP" and that "it was impermissible for Commerce to punish {the respondent} simply because {the respondent} happened to sell its subject merchandise to a relatively large number of U.S. customers during the POR." Id. at *27-28 (emphasis added).

Here, record evidence supports that Baroque, including its U.S. customers, did not benefit from the EBCP because it confirmed that none of its unaffiliated U.S. customers used or benefitted from the EBCP. See Letter on Behalf of Riverside Plywood to Dep't of Commerce re: Riverside Plywood Initial Questionnaire Response at 26-27, Exs. 18a-b (May 14, 2023) (Proprietary Document) (C.R. 30-43) ("Riverside QR"). Moreover, the GOC has also repeatedly confirmed that none of the mandatory respondents nor its U.S. customers used or benefitted from the EBCP as confirmed by the records of China EX-IM bank. See Letter on Behalf of the GOC to Dep't of Commerce re: GOC Section II Questionnaire Response at 23-28 (P.R. 115-126); Letter on Behalf of the GOC to Dep't of Commerce re: GOC Supplemental Questionnaire Response at 3-8 (Aug. 25, 2021) (P.R. 154). Specifically, Baroque has also provided non-use certificates from its U.S. customers which confirmed that certain customers did not use or benefit from the EBCP. See Riverside QR at Exs. 18a-b (Proprietary Document) (C.R. 37). Commerce cannot, therefore, impermissibly punish Baroque by applying AFA to the EBCP because Baroque fully cooperated with Commerce's request and there was no missing information from the record. Thus, consistent

8

with the Court's decision in Yama Ribbons, this Court should reject the United States and AMMWF's arguments that Commerce's application of AFA to the EBCP was warranted.

In sum, Commerce's application of AFA to the EBCP was unsupported by substantial evidence and not in accordance with law because Baroque fully cooperated and provided non-use certificates demonstrating non-use from the program.

## III. CONCLUSION

For the forgoing reasons, Fine Furniture respectfully requests that the Court grant the motions for judgment on the agency record of Fine Furniture and Baroque as the Final Results were not supported by substantial evidence and not in accordance with law. To remedy these errors, Fine Furniture requests that the Court remand the Final Results to Commerce for redetermination consistent with the initial motions filed by Fine Furniture and Baroque.

# CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Kristin H. Mowry, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 1,921 words.

Dated: September 29, 2023

/s/ Kristin H. Mowry
Kristin H. Mowry
Sarah M. Wyss
Ronalda G. Smith
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Fine Furniture*