

CHAMBERS OF
TIMOTHY M. REIF
JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE
ONE FEDERAL PLAZA
NEW YORK, N.Y. 10278-0001

September 20, 2024

**VIA CM/ECF**

Re:   *Baroque Timber Industries (Zhongshan) Co., Ltd. et al v. United States*
Consol. Court No. 22-00210

Dear Counsel:

     Oral argument in this action is scheduled for September 26, 2024, at 10:00am ET in Courtroom No. 1 of the U.S. Court of International Trade, One Federal Plaza, New York, New York, with the option to appear via video conference.  In preparation for oral argument, the court would like counsel to be prepared to address the issues noted below.  As the court continues to review the documents in this case or as the argument progresses, the court may decide to ask additional questions.

     Please be advised that the court prefers to conduct oral argument interactively, allowing each party to respond to the question presented before moving on to the next question.  To facilitate this interaction, counsel are welcome to remain seated for the duration of the hearing.  Any counsel who intends to participate virtually via video conference is instructed to inform the case manager, Lewis Hugh, and is further instructed to test their Internet connection, audio performance and video performance prior to joining the oral argument.  If counsel experiences any difficulties during the test, the court instructs counsel to connect to the oral argument through the provided telephone dial-in.  In this case, counsel may also choose to connect with their computer camera but must speak through the telephone.  Finally, counsel is instructed to turn their camera on and to remain visible to the court throughout the duration of the oral argument.

     Please be advised that the use of personal devices with screens is prohibited in the courtroom during the duration of the oral argument.

For the oral argument, the court would like parties to focus primarily on the following issues.

I. <u>**Commerce's calculation of the plywood benchmark**</u>

    A.    In the IDM, Commerce asserts that its practice is to average multiple world market prices to the extent practicable.  Commerce also asserts that its normal practice is to rely on data reflecting the narrowest category of products encompassing the input product.  IDM at 86.  Please address:

- Whether Commerce departed from its normal practice of relying on the most product-specific data in including the non-grade specific UN Comtrade data in the plywood benchmark.

- Whether excluding such data would run counter to Commerce's practice to average multiple world market prices to the extent practicable.

    B.    In the IDM, Commerce explained that it continued to include the UN Comtrade data in its calculation because Baroque "did not adequately support its arguments that the UN Comtrade data are inappropriate to calculate plywood benchmarks for Baroque Timber's purchases of C/D grade plywood."  IDM at 86.  Commerce acknowledged that Baroque provided: (1) "certifications from all of Baroque Timber's plywood suppliers stating that they had exclusively sold grade C/D plywood to Baroque Timber during the POR"; (2) "witness statements, which further supported [Baroque's] claims about [its] usage of lower grade plywood and demonstrated that the plywood industry as a whole is delineated by grade"; and (3) "reports on the plywood industry and its grading system, including pictures of a sample of the inputs Baroque Timber uses which generally match the industry descriptions of lower grade plywood."  *Id.*

- Please address what further information respondents could provide to demonstrate that the UN Comtrade data are inappropriate to calculate the plywood benchmark.

II. <u>**Commerce's calculation of the benchmarks for face and backboard veneer**</u>

    A.    In the IDM, Commerce asserted that because it lacked "further information on the record about the composition of the UN Comtrade data with respect to face veneer and backboard/core veneer," Commerce found that the UN Comtrade data are still suitable for calculating the veneer benchmarks. IDM at 92.  Plaintiff argues that "it is impossible to know the exact

composition" of the UN Comtrade veneer data.  Pl. Reply Br. at 8.  Plaintiff argues also that the UN Comtrade data "cannot be representative of industry pricing standards for both veneer types based on the record evidence, regardless of the composition of data."  Pl. Br. at 20.  Please address:

- Whether information about the composition of the UN Comtrade data with respect to face and backboard veneer is necessary, given the other information in the record, to determine whether such data are suitable for benchmarking face and backboard veneer.

- Whether the composition of the UN Comtrade data with respect to face and backboard veneer can even be determined, and if not, what other information could demonstrate that the UN Comtrade data are suitable or unsuitable for benchmarking face and backboard veneer.

III.  **Commerce's calculation of the inland freight benchmark**

A.  In the IDM, Commerce explained that its inland freight benchmark calculation was "consistent with Commerce's practice in other countervailing duty proceedings."  IDM at 97.  In support, Commerce cited *Boltless Steel Shelving*, IDM at cmt. 7 ("[T]he best methodology is to calculate a simple average of these [benchmark] prices.")).  Plaintiff argues that *Boltless Steel Shelving* is inapposite because it involved "the averaging of hot-rolled coil steel prices from multiple sources" whereas this case contains only "a single source that reports volume, distance, and cost, for multiple shipments, related to inland freight."  Pl. Br. at 22.  In its response brief, the government states that its citation to *Boltless Steel Shelving* was to show that Commerce's practice "is to use simple averages where appropriate, depending on the specific factual and methodological circumstances."  Def. Br. at 23.  Please address:

- The reasons as stated by Commerce that the specific factual and methodological circumstances in this case warrant the use of a simple average methodology.

IV.  **Commerce's application of adverse facts available to find certain of Baroque's input suppliers to be government authorities**

A.  In the IDM, Commerce cites to *Citric Acid from China 2012* to show that statements and information from the suppliers, rather than from the GOC or CCP themselves, are not sufficient for Commerce to analyze whether those suppliers are government authorities.  *See* IDM at 58.  Plaintiff

3

insists that the facts of that case "were extremely case specific and do not translate to this review." Pl. Br. at 39. Plaintiff argues that the type of government documentation required in *Citric Acid from China 2012* "was only possible because the owner had been secretary of a specific government entity and then was no longer part of that entity." *Id.* Please address:

- What sort of government documentation, if any, could the GOC have provided in this case that would have sufficiently supported its claim that the suppliers at issue are not government authorities.

- Whether any authority exists other than *Citric Acid from China 2012* that supports or contradicts Commerce's position that only government documentation could be sufficient to analyze whether suppliers are authorities.

B. In the cover letter to the Supplemental Questionnaire, Commerce informed the GOC that Commerce had "identified certain areas in the initial questionnaire response submitted by the GOC for which [Commerce] require[d] additional information." Supplemental Questionnaire at 1. Then, in the Supplemental Questionnaire, Commerce requested information regarding the involvement in the input suppliers or presence in them of the GOC, CCP or any of the nine related entities. *See id.* at 8-9 ("For all producers from whom the respondents purchased inputs during the POR, please identify which owners, managers, and directors were Chinese government or CCP officials during the POR."). These questions are mostly copied verbatim from similar questions in the Initial Questionnaire. *See*, e.g., Initial Questionnaire at II-41 ("Please identify any individual owners, members of the board of directors, or senior managers who were Government or CCP officials during the POR.").

- Please address whether Commerce adequately informed the GOC of "the nature of the deficiency" in its initial responses with respect to Commerce's questions regarding the involvement in the input suppliers or presence in them of the GOC, CCP or any of the nine related entities, as required by 19 U.S.C. § 1677m(d).

V. **Commerce's application of adverse facts available to find use of the Export Buyer's Credit Program**

A. In its Initial Questionnaire Response, Riverside provided the U.S customer lists during the POR for both Riverside Plywood and Baroque Timber at

4

Exhibits 16A and 16B, respectively.  These lists showed eight Riverside customers and 12 Baroque customers.  Riverside also provided at Exhibits 18A and 18B customer declarations confirming non-use of the EBCP during the POR.  However, Exhibit 18A contains only seven customer declarations and Exhibit 18B contains only one customer declaration.  In the IDM, Commerce asserts that for it to determine use or non-use of the EBCP, "all of a respondent's U.S. customers must be willing to participate in the review because any benefit calculation for this program would need to take them all into account."  IDM at 37.  Please address:

- Whether plaintiff's partial certification of its customers' non-use of the EBCP is sufficient to fill any gap in the record created by the GOC's non-cooperation with Commerce's requests for information.

- Whether other available record information provided by respondents could be sufficient to fill any gap in the record.

The court prefers to discuss any confidential information all at once, following the public session, at which time those without authorized access to confidential information will be asked to leave the Courtroom or be dropped from the videoconference.

Parties may raise other issues that they consider to be of highest importance.  Thank you for your assistance and cooperation.

Sincerely,

/s/ Timothy M. Reif

_____

Timothy M. Reif, Judge

5