UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE TIMOTHY R. REIF, JUDGE

| | |
|---|---|
| BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD. AND RIVERSIDE PLYWOOD CO, ET AL </br></br>Plaintiffs,</br></br>and</br></br>ZHEJIANG DADONGWU GREENHOME WOOD., CO., LTD., *et al.*,</br></br>Consolidated Plaintiffs,</br></br>and</br></br>LUMBER LIQUIDATORS SERVICES, LLC,</br></br>Plaintiff-Intervenor</br></br>v.</br></br>UNITED STATES,</br></br>Defendant,</br></br>and</br></br>AMERICAN MANUFACTUERERS OF MULTILAYERED WOOD FLOORING,</br></br>Defendant-Intervenor | Consol. Ct. No. 22-00210 |

**COMMENTS OPPOSING FINAL REMAND REDETERMINATION OF CONSOLIDATED PLAINTIFFS FINE FURNITURE (SHANGHAI) LIMITED AND DOUBLE F LIMITED**

Kristin H. Mowry
Sarah M. Wyss
Clemence D. Kim
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015

202-688-3610<br>
trade@mowrygrimson.com<br>
*Counsel to Fine Furniture (Shanghai)*<br>
*Limited and Double F Limited*

Dated: January 30, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................... 1
STANDARD OF REVIEW ............................................................................................................ 2
ARGUMENT .................................................................................................................................. 3
CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**
AG der Dillinger Huttenwerke v. United States,
 28 CIT 94, 106, 310 F. Supp. 2d 1347 (2004) .................................................................. 2, 8
Beijing Tianhai Indus. Co. v. United States,
 __ CIT __, 52 F. Supp. 3d 1351 (2015) ............................................................................. 5, 9
Changzhou Trina Solar Energy Co. v. United States,
 __ CIT __, 352 F. Supp. 3d 1316 (2018) ........................................................................... 5, 9
Changzhou Trina Solar Energy Co. v. United States,
 __ CIT __, 466 F. Supp. 3d 1287 (2020) ........................................................................... 5, 9
Changzhou Trina Solar Energy Co. v. United States,
 __ CIT __, 975 F.3d 1318 (2024) ...................................................................................... 3, 4
Consol. Edison Co. v. NLRB,
 305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938) ............................................................... 2
DuPont Teijin Films USA v. United States,
 407 F.3d 1211 (Fed. Cir. 2005) ..................................................................................... 2, 3, 4
Fine Furniture (Shanghai) Ltd. v. United States,
 748 F.3d 1365 (Fed. Cir. 2014) ............................................................................................. 5
Huayin Foreign Trade Corp. v. United States,
 322 F.3d 1369 (Fed. Cir. 2003) ............................................................................................. 2
NMB Sing. Ltd. v. United States,
 28 CIT 1252, 1260, 341 F. Supp. 2d 1327, 1334 (2004) ...................................................... 2
NMB Sing. Ltd. v. United States,
 557 F.3d 1316 (Fed. Cir. 2009) ............................................................................................. 3
SolarWorld Ams., Inc. v. United States,
 910 F.3d 1216 (Fed. Cir. 2018)). .......................................................................................... 3
Swiff-Train Co. v. United States,
 793 F.3d 1355 (Fed. Cir. 2015) ............................................................................................. 2

**Statutes**
19 U.S.C. § 1516a ........................................................................................................................ 2

**Other Authorities**
Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial
 Recission of Countervailing Duty Administrative Review; 2019, 87 Fed. Reg. 36,305 (Dep't
 of Commerce Jun. 16, 2022) ................................................................................................. 1
Multilayered Wood Flooring From the People's Republic of China: Preliminary Results of
 Countervailing Duty Administrative Review, and Intent to Rescind Review, in Part; 2019, 86
 Fed. Reg. 73,244 (Dep't of Commerce Dec. 27, 2021) ......................................................... 6

**Regulations**
19 C.F.R. § 351.511(a)(2) ............................................................................................................ 9

# INTRODUCTION AND SUMMARY OF THE ARGUMENT

On behalf of Consolidated Plaintiffs Fine Furniture (Shanghai) Limited and Double F Limited (collectively, "Fine Furniture"), we submit these comments in response to the remand redetermination filed by the Department of Commerce ("Commerce") in Baroque Timber Industries (Zhongshan) Co., Ltd. et al. v. United States, Consol. Ct. No. 22-00210, Slip Op. 25-35 (Apr. 3, 2025) ("Remand Order"), Final Results of Redetermination Pursuant to Court Remand (Sept. 19, 2025) (Public Document), ECF No. 85 ("Remand Results").

The Court remanded Commerce's final results in the ninth administrative review of the countervailing duty ("CVD") order on multilayered wood flooring ("MLWF") from the People's Republic of China ("China") for its reconsideration of several issues including: (1) Commerce's choice of datasets for its calculation of the benchmark for plywood; (2) Commerce's choice of datasets for its calculation of the benchmark for face and backboard veneers; and (3) Commerce's application of adverse facts available ("AFA") to find that certain input suppliers of Baroque Timber Industries (Zhongshan) Co. Ltd. ("Baroque") are government authorities under section 771(5)(B) of the Tariff Act of 1930 ("the Act"). See generally Remand Order at 9-41; Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Recission of Countervailing Duty Administrative Review; 2019, 87 Fed. Reg. 36,305 (Dep't of Commerce Jun. 16, 2022) ("Final Results") (P.R. 375) and accompanying Issues and Dec. Mem. ("Final Dec. Mem.") (P.R. 369). Commerce's remand redetermination remains unsupported by substantial evidence, contrary to law and not in compliance with the Court's mandate on two issues. In its remand redetermination, contrary to the Court's mandate, Commerce fails to adequately explain (1) its reasoning for continuing to include the global dataset from the United Nations Comtrade database ("UN Comtrade") and Statistics New Zealand ("Stats.NZ") and averaging with the

dataset from the International Tropical Timber Organization ("ITTO"); and (2) its reasoning for continuing to include the global dataset from UN Comtrade and averaging it with the ITTO Peru and ITTO Ghana data.  The Court must reject Commerce' redetermination on these two issues and again remand with instructions to Commerce to (1) use the grade-specific plywood benchmark, i.e., the ITTO dataset containing C/CC plywood grade prices and (2) use the ITTO dataset for face/back veneer benchmark, because these data reflect the specific inputs actually used by the foreign manufacturer in producing MLWF.

## STANDARD OF REVIEW

The Court reviews remand determinations for compliance with its remand order.  See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1260, 341 F. Supp. 2d 1327, 1334 (2004) (affirming on remand where agency determinations were in accordance with law, supported by substantial evidence and otherwise satisfied the remand order).  Further, any factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law.  See 19 U.S.C. § 1516a(b)(1)(B)(i); see also, e.g., AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 106, 310 F. Supp. 2d 1347, 1358 (2004).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (internal quotation marks omitted); DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).  Substantial evidence requires "more than a mere scintilla." See, e.g., Swiff-Train Co. v. United States, 793 F.3d 1355, 1359 (Fed. Cir. 2015) (internal quotation marks omitted) (quoting Consol. Edison, 305 U.S. at 229 (1938)).  Substantial evidence supporting an agency determination must be based on the whole record, and the Court

shall take into account not only the information that supports the agency's decision but also whatever in the "record... fairly detracts from {its weight}." Changzhou Trina Solar Energy Co. v. United States, __ CIT __, __, 975 F.3d 1318 at 1326 (2024) (quoting SolarWorld Ams., Inc. v. United States, 910 F.3d 1216, 1222 (Fed. Cir. 2018)). Although Commerce does not have to provide perfect explanations, "the path of Commerce's decision must be reasonably discernable." NMB Sing. Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009) .

## ARGUMENT

### I. COMMERCE'S INCLUSION OF UN COMTRADE DATA FOR ITS TIER-TWO PLYWOOD AND VENEER BENCHMARKS FAILS TO COMPLY WITH THE COURT'S REMAND ORDER AND REMAINS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND UNLAWFUL

First, as further explained below, Commerce failed to comply with the Court's remand order to "explain adequately its conclusion in light of the record and arguments presented that inclusion of the UN Comtrade data is appropriate to calculate the plywood benchmark" because Commerce again failed to consider information on the record that fairly detracts from its conclusion and failed to show how a reasonable reading of the record illustrates that the inclusion of all plywood grades does not distort its plywood benchmark. Remand Order at 13-14 (noting the fact that Commerce acknowledged that plywood grade has significant impact on price and that Baroque purchased only lower grade plywood to ultimately hold that Commerce failed to show that its conclusion to use the UN Comtrade data which "include[d] all grade of plywood" is supported by substantial evidence) (citing Final Dec. Mem.); see also DuPont, 407 F.3d at 1215 (holding that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); Trina, 975 F.3d at 1326 (holding that Commerce must account for information on the record that would detract from their determination)

Similarly, as further explained below, Commerce also failed to comply with the Court's

3

remand order to adequately address "the information in the record demonstrating that backboard and face veneer are distinct and that, therefore, the UN Comtrade data containing both backboard and face veneer could be overly broad and distortive" because it failed to show how a reasonable reading of the record explain the distinctions between backboard and face veneers and its impact on benchmark calculation using substantial evidence on the record. Remand Order at 16-17 (instructing that "{i}f, on remand, Commerce determines that it is unable to provide such an explanation, then Commerce is instructed to recalculate the benchmarks for face and backboard veneer using solely the ITTO Ghana data."); see also DuPont, 407 F.3d at 1215; Trina, 975 F.3d at 1326 (holding that Commerce must account for information on the record that would detract from their determination).

### A. Plywood

In its Remand Results, Commerce continues to wrongly find that the inclusion of the global UN Comtrade data in its calculation of the plywood benchmark is appropriate. See Remand Results at 11-18. Rather than actually addressing whether the global UN Comtrade data could be overly broad and distortive for either plywood because it contains "all grades of plywood," Commerce first attempts to claim that "{b}enchmark data containing different categories of merchandise (e.g., different grades of plywood) can still be suitable for benchmarking purchases of a narrower category of merchandise (e.g., Baroque's purchases of C/D grade plywood), if that data is still comparable to the purchases in question." Remand Results at 16.

As this Court has consistently clarified, however, to measure the adequacy of remuneration, Commerce must "compare{} the respondent's reported costs for the input in question { . . . } with the calculated benchmark price, which is representative of the market price for the good at issue." Beijing Tianhai Indus. Co. v. United States, __ CIT __ at __, 52 F. Supp. 3d 1351 at 1356, n.9

4

(2015) (citing Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365, 1368 (Fed. Cir. 2014)) (emphasis added). In making this comparison, Commerce is directed under 19 C.F.R. § 351.511(a)(2) to account for "factors affecting comparability" when using a world market price to calculate the tier-two benchmark. See 19 C.F.R. § 351.511(a)(2); see also Changzhou Trina Solar Energy Co. v. United States, __ CIT __, 352 F. Supp. 3d 1316, 1332 (2018) (finding that product specificity of benchmarks is a "vital comparability concern") ("Changzhou Trina I").

Here, as the Court pointed out in the Remand Order, Commerce itself has (1) recognized that the "plywood industry as a whole is delineated by grade" and (2) that the ITTO data is the only benchmark data on the record that delineated by grade while the UN Comtrade data does not. Remand Order at 13. The Court has been unambiguous about the importance of product-specificity in Commerce's determination of benchmark dataset. See Changzhou Trina I, 352 F. Supp. 3d at 1332; see also Changzhou Trina Solar Energy Co. v. United States, __ CIT __, 466 F. Supp. 3d 1287, 1294-5 (2020) (holding that Commerce correctly determined in its second remand results to use only IHS data as a benchmark for aluminum extrusions because it was the most specific to the solar frames input used by the respondents, thus excluding the UN Comtrade data even though Commerce had originally determined to continue to rely on the UN Comtrade data on the basis that it is "sufficiently comparable to solar frames" in its final results and first remand results) ("Changzhou Trina II"). Here, similar to Changzhou Trina I and II, the record information shows that there is a benchmark on the record that is more product-specific than the UN Comtrade data to measure the adequacy of remuneration for the "input in question." Beijing Tianhai, __ CIT at __, 52 F. Supp. 3d at 1356, n.9; see Letter on Behalf of Baroque to Dep't of Commerce re: Benchmark Data Submission at 1-3, Exs. 2-4B (Nov. 23, 2021) (Confidential Version) ("Baroque Benchmark") (providing the ITTO benchmark as well as information on the grade of plywood that

5

Baroque Timber used in its production demonstrating that plywood market around the world and in the United States is delineated by Grade A, B, C and D (including hybrid grades like CC, CD, *etc.*)) (P.R. 277-286) (C.R. 101-116); Multilayered Wood Flooring From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, and Intent to Rescind Review, in Part; 2019, 86 Fed. Reg. 73,244 (Dep't of Commerce Dec. 27, 2021) (P.R. 311) and accompanying Issues and Dec. Mem. ("Prelim Dec. Mem.") at 42 (P.R. 303); Mem. from Dennis McClure to the File re: Preliminary Results Calculations for Riverside Plywood Corp. at Attach. 2, Baroque Plywood Tab (Dec. 17, 2021) (Confidential Version) ("Baroque Prelim. Calc. Mem.") (C.R. 130, 131).

Further, Commerce notes that the pricing difference between grades of plywood is unquantified and that any potential distortion would be "speculative." See Remand Results at 16. However, the fact that UN Comtrade data contain all grades of plywood is not speculative; that fact is firmly established in the record. See Remand Order at 12; Final Dec. Mem. at 86 (P.R. 369). Similarly, the record shows that grade differences lead directly to price differences. See id. at 87 (recognizing the existence of price differences per plywood grade/quality as represented in the ITTO data); Baroque Benchmark at Ex. 4A (showing that that plywood and veneer is sold in a variety of different grades with different prices); Letter on Behalf of Baroque to Commerce re: Benchmark Rebuttal at Ex 1 (Dec. 2, 2021) (Public Document) ("Baroque Benchmark Rebuttal") (providing that "The two biggest influences on price are species type and grade, with grade being the most important. There is a significant price difference between Grade AB plywood and Grade CD plywood.") (P.R. 295). Commerce mischaracterizes the record and ignores the Court's finding in the Remand Order by taking the position that distortion based on grade differences is "speculative." Remand Results at 16. Moreover, Commerce, without citing to any evidence on

the record, speculates that "the UN Comtrade data <u>might</u> consist mostly of sales of grade C or D plywood, that might be more reflective of Baroque's C/D grade plywood purchases than even the ITTO data, which is composed of only C/CC grade plywood." Remand Results at 16 (emphasis added). Commerce's speculation is ungrounded by substantial evidence on the record and does not satisfy the Court's <u>Remand Order</u> to "explain adequately its conclusion in light of the record and arguments presented that inclusion of the UN Comtrade data is appropriate to calculate the plywood benchmark." <u>Remand Order</u> at 13-14 (noting the fact that Commerce acknowledged that plywood grade has significant impact on price and that Baroque purchased only lower grade plywood to ultimately hold that Commerce failed to show that its conclusion to use the UN Comtrade data which "include[d] all grade of plywood" is supported by substantial evidence). The fact that the UN Comtrade data does not differentiate between differing grades of plywood only further highlights the issue of potential distortion from the inclusion of this dataset and does not justify Commerce's assumptions about the plywood grades UN Comtrade dataset <u>might</u> include or not. See <u>id.</u> at 16 (characterizing the potential distortion of "grade-inclusive" UN Comtrade data as "assumed" and "unquantified"). Ultimately, Commerce again failed to explain, in light of information that detracts from their conclusion, i.e., that UN Comtrade data's lack of grade distinction and inclusion of all grades of plywood may be distortive and that ITTO data is more product-specific to the <u>input in question</u>.

Lastly, Commerce suggests that the record demonstrates that species has a heavy impact on price and that therefore the ITTO data, containing "plywood made of pine, copaiba, virola, cedar, and lupuna," does not represent the input in question. <u>See</u> Remand Results at 17 (citing to Baroque Rebuttal Benchmark at Exhibit 1). However, Commerce mischaracterizes the Dai report it cites. <u>See id.</u> As the Dai report notes, indeed, "different wood species types have significantly

7

different prices due to desirability of appearance and growth." Baroque Rebuttal Benchmark at Exhibit 1. What Commerce conflates however is the species difference discussed here is that between "slow growing hardwoods" and "fast growing woods." Id. Commerce has not cited to any evidence on the record that would suggest that the "pine, copaiba, virola, cedar, and lupuna" represented in the ITTO data are "slow growing hardwoods" that would be priced significantly differently from "fast growing woods" such as eucalyptus. In fact, Commerce's quantification of "67-75%" of species impact on plywood prices is a misreading of the record when the Dai report is referring to the price of "domestic sawnwood prices" of eucalyptus compared to other sawnwood prices of "fast growing woods" as listed on page 17 of the ITTO report. Id. Thus, Commerce failed to explain, in light of information that detracts from their conclusion, i.e., that UN Comtrade data's lack of grade distinction and inclusion of all grades of plywood may be distortive and that ITTO data is more product-specific to the input in question.

In sum, Commerce has failed to adequately address information in the record demonstrating that the UN Comtrade data are overbroad and thus not comparable to the input in question, i.e., plywood. Beijing Tianhai, __ CIT at __, 52 F. Supp. 3d at 1356, n.9; AG der Dillinger, 28 CIT at 106, 310 F. Supp. 2d at 1358. Accordingly, the Court should instruct Commerce to use the most grade and input-specific benchmark on the record, i.e., the ITTO data to measure the adequacy of remuneration for plywood.

**B. Veneers**

In its Remand Results, Commerce continues to wrongly find that the inclusion of the global UN Comtrade data in its calculation of the veneers benchmark is appropriate. Despite this Court's instructions to adequately explain the distinctions between backboard and face veneers and the impact on benchmark calculation, Commerce only explains that the distinction "does not mean

8

that UN Comtrade data, which do not reflect the differences between backboard and face veneer, are not still comparable to Baroque's purchases of both." Remand Results at 19. Commerce conveniently does not address the fact that the UN Comtrade data includes all types of veneer but focuses its claims that the statute directs it to a "world price," referring to the fact that "the UN Comtrade data used in the plywood benchmark, are more reflective of a world market price, encompassing nearly one billion kilograms worth almost $1.5 billion of world export sales from 75 countries." Id. at 20. However, as Commerce rightly quotes, 19 C.F.R. § 351.511(a)(2)(ii) of Commerce's regulation calls for the use of "a world market price where it is reasonable to conclude that such price would be available to the purchasers in the country in question" not a global market price that includes as many a countries' prices as possible. As explained above, the main focus of a tier-two world market price is to account for "factors affecting comparability." See 19 C.F.R. § 351.511(a)(2); see also Changzhou Trina I, 352 F. Supp. 3d at 1332; Changzhou Trina II, 466 F. Supp. 3d at 1294-5.

Here, the record information shows that there is a benchmark on the record that is more product-specific to the backboard and face veneers, *i.e.*, the ITTO data that is delineated by backboard and face veneers, than the UN Comtrade data to measure the adequacy of remuneration for the "input in question" which will allow Commerce to meet its statutory obligation to determine margins as accurately as possible. Beijing Tianhai, __ CIT at __, 52 F. Supp. 3d at 1356, n.9; see Baroque Benchmark at 1-3, Exs. 2-4B (Confidential Version) (P.R. 277-286) (C.R. 101-116) (providing the ITTO benchmark). Because Commerce has failed to provide an explanation accounting for how the all-inclusive UN Comtrade data can account for the distinctive nature and pricing of backboard and face veneers, the Court should instruct Commerce to recalculate the benchmarks for face and backboard veneer using solely the ITTO Ghana data. See Remand Order

9

at 17.

Lastly, Fine Furniture concurs with and incorporates by reference the comments filed by Baroque on Commerce's Remand Results.

## CONCLUSION

For the reasons set forth herein and in the comments filed by Baroque, this Court must reject Commerce's Remand Results and remand to Commerce with specific instructions for each issue set forth above.

Respectfully submitted,

Dated: January 30, 2026

/s/ Kristin H. Mowry
Kristin H. Mowry
Sarah M. Wyss
Clemence D. Kim
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Fine Furniture (Shanghai) Limited and Double F Limited*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Kristin H. Mowry, hereby certify that this brief complies with the word limitation set forth in Paragraph 2(b) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 2982 words.

Respectfully submitted,

Dated: January 30, 2026

/s/ Kristin H. Mowry
Kristin H. Mowry
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Fine Furniture (Shanghai)*
*Limited and Double F Limited*